UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ASHLEIGH CORKER, NICOLE QUILL, SHELBY HOPKINS and DAVID HAN KOI,<br><br>Plaintiffs<br><br>v.<br><br>EZCATER, INC.,<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

## I. INTRODUCTION

1. This action arises out of a pattern of discrimination and retaliation by defendant, ezCater, Inc. ("ezCater"), directed against the plaintiffs, Ashleigh Corker ("Corker"), Nicole Quill ("Quill"), Shelby Hopkins ("Hopkins") and David Han Koi ("Han Koi") (collectively, the "Plaintiffs"). As set forth in detail below, ezCater established, tolerated and fostered an atmosphere of discrimination against the plaintiffs sounding in gender (Corker, Hopkins and Quill), race (Han Koi), and pregnancy (Quill) discrimination in violation of Title VII of the Civil Rights Act of 1964 and G.L. c. 151B, §4, as amended by The Pregnant Workers Fairness Act. Further, ezCater failed to establish an effective and meaningful system for employees to complain of such discrimination and to have it rectified, and retaliated against employees who did complain. EzCater also violated the Family Medical Leave Act, 29 U.S.C. § 2601 ("FMLA") and Paid Family Medical Leave, G.L. c. 175M ("PFML") by unlawfully interfering with, restraining, or denying the exercise of Quill, Hopkins and Koi's rights by, *inter alia*, terminating Quill's employment while she was on leave, failing to return Hopkins to the same position upon

her return from leave and then terminating her employment weeks later, and terminating Han Koi's employment less than three business days after he noticed his intention to take leave. The discriminatory and retaliatory actions set forth above were not isolated incidents but instead were commonplace at ezCater, which resulted in a toxic workplace culture and a hostile work environment. Plaintiffs bring claims for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Count I) discrimination and retaliation in violation of the FMLA and PFML (Count II) and violation of the Massachusetts Pay Equity Law (Count III).

## II.  PARTIES

2.      Plaintiff Corker is a natural person with a last and usual residence located at 1417 9th Avenue, Seattle, WA 98119.

3.      Plaintiff Quill is a natural person with a last and usual residence located at 113 Fire Road #11, Lancaster, MA 01523.

4.      Plaintiff Shelby Hopkins is a natural person with a last and usual residence located at 2229 Electric Lane, Charlotte, NC 28205.

5.      Plaintiff David Han Koi is a natural person with a last and usual residence located at 4610 Center Boulevard, Apt. #605, Long Island City, NY 11109.

6.      The Defendant, ezCater, is a corporation with a principal place of business located at 40 Water Street, 5th Floor, Boston, MA 02109. EzCater connects businesses with restaurants and caterers through an online marketplace. EzCater has approximately 999 employees across six continents. As of December, 2021, ezCater was valued at $1.6 billion dollars.

## III. JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter and the defendant in this case pursuant to 28 U.S.C. §1331 (federal question jurisdiction). This Court has supplemental

jurisdiction over the state law claims because such claims are integrally and factually related to the federal claims and form part of the same case or controversy pursuant to 28 U.S.C. §1367.

## IV. FACTS

### A. Corker

8.      Corker is a product director with over ten years' experience in the e-commerce industry.

9.      In or about June, 2022, Corker began working for ezCater as its director of product, marketplace.

10.     EzCater's working environment was toxic and hostile and marked by constant infighting, scapegoating and management threats of unjust discipline that caused undue stress on its employees, particularly women and people of color.

11.     Among other things, ezCater management:

a.  Insisted that Corker place one of her direct reports, Han Koi, who is Asian-American and one of the few non-Caucasian employees within ezCater's organization, on a performance improvement plan, or PIP, despite the fact that Han Koi was a good employee and better performer than most of his Caucasian peers. Corker resisted taking this action, stating that it would be inappropriate because of the quality of his work. Corker asked for explanations. EzCater's management was unable to articulate a legitimate reason for attempting to place Han Koi on a PIP.

b.  Unfairly forced another non-Caucasian employee, Ojus Padson ("Padson"), out of the company, despite the fact that Padson was a better performer than most of his Caucasian peers.

c.  Constantly shuffled the job responsibilities of Corker and her female and non-Caucasian colleague's positions. Corker and her female and non-Caucasian colleagues were bounced between different departments and executives, which made it much more difficult for them to work effectively at ezCater. This was not done to Caucasian and male employees. When Corker requested an explanation for the constant shuffling, ezCater management was unable to provide one.

d.  Excluded Corker and her female and non-Caucasian colleagues from secret

3

leadership meetings attended by male, Caucasian employees who were at similar levels within the organization. Exclusion from these meetings directly impacted Corker and her female and non-Caucasian colleague's employment.

12. Corker and her female colleagues were regularly discriminated against on account of their gender, by, among other things:

    a. <u>Being treated differently from their male peers, being belittled and having their contributions to the company diminished</u>: Male ezCater executives regularly told female employees who offered their opinion that they were "not getting it" only to later commend a male employee who offered the same opinion. A male ezCater executive told Corker, "sorry, I'm going to be an a--hole here," and proceeded to point out the purported reasons that Corker's analysis was wrong, when in fact she was right. EzCater leaders often told Corker, as well as her female colleagues, that she was not "thinking big enough."

    b. <u>Being subjected to discipline for minor infractions that their male peers committed without repercussion</u>. Women were often reprimanded and told they were "not a team player" when they raised legitimate questions about a particular company strategy.

13. Further, ezCater management often retaliated against employees who complained about its hostile work environment and/or their discriminatory treatment.

14. When Corker complained about her mistreatment she was told she was not being "positive" and that she was not a "team player."

15. On or about May 23, 2023, an ezCater vice president made an unwanted sexual advance towards Corker at a company work outing in which alcohol was consumed.

16. Corker rejected his advances.

17. Immediately thereafter, this executive provided negative feedback about Corker to her manager.

18. His feedback was false and misleading.

19. This negative feedback was in retribution for Corker having spurned his sexual advances.

4

20.    On or about July 18, 2023, ezCater Caucasian employees provided negative feedback about Corker to her manager as a means of retaliating against her because she, as well as other ezCater employees, complained when these employees exhibited racial bias in considering candidates for ezCater positions, by, among other things, unfairly and without justification discriminating against an African American candidate.

21.    On or about June 5, 2023, Corker's manager, Joshua Berg ("Berg"), told Corker that she was "controlling" and needed to "smile more and be more open and warm."

22.    Corker responded to this overtly gendered language by sending Berg a Slack message in which she politely stated that his comments could be associated with gender bias and that they seemingly perpetuated a double standard at the company regarding the treatment and perception of men and women.

23.    <u>Within two weeks of sending this email, Corker was stripped of approximately seventy-five percent of her responsibilities and four of her six direct reports were taken away from her</u>.

24.    In response to this clear retaliation, on or about June 13, 2023, Corker contacted Uttara Jadhav ("Jadhav"), ezCater's Human Resources business partner and stated that she was retaliated against for having complained about harassment and discriminatory treatment.

25.    Jadhav never reported back to Corker regarding her complaint of harassment and discrimination.

26.    Upon information and belief, there was no investigation of Corker's complaint.

27.    Despite this complaint, no remedial action was taken.

28.    On or about January 22, 2024, Corker's colleague, Emil Ray ("Ray"), ezCater's director of product management, told Corker he was concerned about the company's systemic

discrimination of women and pattern and practice of retaliating against employees for taking leave and stated, among other things:

  a.  That many women were being unfairly put on PIPs;

  b.  That he complained about ezCater's practice of retaliating against employees for taking medical leave;

  c.  That he was concerned that his direct report, Quill, was being discriminated against and unfairly threatened with a PIP; and

  d.  That he was retaliated against by ezCater management for reporting his concerns regarding discrimination and retaliation.

See Exhibit A, appended, which is a text exchange between Corker and Ray in which Ray alludes to these conversations and states that "there is a bias" regarding the manner in which ezCater female employees are treated.

29.    Ray also warned Corker against complaining to ezCater Human Resources because he stated that company management could take additional retaliatory action against her.

30.    On or about February 8, 2024, Berg and Jadhav informed Corker on a Zoom call that she was being terminated.

31.    No explanation for Corker's termination was provided.

32.    At all times material hereto, Corker was deemed an above average employee and had never been subjected to any progressive discipline.

33.    Jadhav called Corker the next day to discuss the logistics of her separation.

34.    During this call, Jadhav stated "she was nervous for the call," which Corker interpreted to mean that Jadhav understood that Corker had potential legal claims against the company.

35.    On or about February 13, 2024, Corker sent an email titled "Gender Discrimination at ezCater" to Ashwin Raj, ezCater's chief executive officer and Janine Allo,

ezCater's chief people officer, in which she described the systemic discrimination at ezCater. See

Exhibit B, appended, an excerpt of which states:

> As you may or may not know, I was fired last Thursday, and so, I find myself in the "fortunate" position of being able to stand up and say something on behalf of the remaining women in the product organization. My own experience, coupled with the experience of multiple others suggests that there is a pattern of gender discrimination. I believe the gender bias within the Product and Tech org is insidious, hurting psychological safety, and the ability for the organization to build great products on behalf of our customers.

36.     On or about February 22, 2024, Shortly after her termination, ezCater engaged in a round of layoffs in which Quill, Hopkins and Han Koi also lost their jobs.

37.     Upon information and belief, all of the employees who lost their jobs during this time were women and/or underrepresented minorities.

38.     Upon information and belief, Corker was offered less severance than her comparable male peers who had previously been dismissed by ezCater.

39.     Upon information and belief, Ray's employment was later terminated after he lodged his complaints regarding ezCater's hostile work environment and discriminatory and retaliatory practices.

40.     As a result of ezCater's discrimination and hostile work environment, Corker suffered emotional distress and regularly sees a therapist.

41.     On or about May 30, 2024, Corker initiated an action before the MCAD and EEOC alleging violations of G.L. c. 151B, § 4, and Title VII of the Civil Rights Act of 1964. See MCAD Docket No.: 19BEM02560; EEOC Federal Charge Number: 16C-2024-02041.

42.     On or about September 10, 2024, Corker removed her action from the EEOC and now brings this action.

### B. Quill

43.     Quill is a product manager with nearly ten years' experience in the e-commerce industry.

44.     In or about June, 2022, Quill began working for ezCater as a senior product manager.

45.     EzCater's working environment that Quill was subjected to was toxic, hostile and discriminatory.

46.     EzCater leadership ignored Quill's ideas and disregarded her contributions to the company.

47.     Senior ezCater leadership often harassed Quill and threatened her with termination.

48.     In the first quarter of 2024, Ray, Quill's manager, told Quill not to assume leadership over a failing project because Berg was looking for a justification to terminate her employment when the project inevitably failed.

49.     This attempt to sabotage Quill's employment with ezCater was rooted in a discriminatory animus against Quill on account of her gender.

50.     As stated above, in paragraph 28(c), Ray believed that Quill was being discriminated against by ezCater management on account of her gender.

51.     Ray also believed that Quill, like other women at ezCater, was being unfairly threatened with a PIP.

52.     Accordingly Ray complained about Quill's discriminatory treatment and ezCater's systemically discriminatory working environment, but not only was nothing done to remedy the problem but Ray was retaliated against for lodging his complaints (as stated above in

8

paragraph 39, above, Ray's employment was later terminated).

As a result of ezCater's hostile work environment, Quill suffered emotional distress and began to regularly see a therapist.

53.    In or about September, 2023, Quill discovered she was pregnant.

54.    In or about December, 2023, Quill notified ezCater management of her pregnancy and stated her intention to take leave upon the birth of her child in or about May, 2024.

55.    Thereafter, ezCater's toxic and hostile work environment became demonstrably worse as ezCater management began retaliating against Quill for her stated intention to take leave, by, among other things, seeking to sabotage Quill's employment by having her team take on a futile project that had been previously and unsuccessfully overseen by at least three other teams.

56.    This was yet another transparent attempt to doom Quill to failure so as to provide ezCater management with a pretextual justification for her termination.

57.    As a result, Quill became so anxious and depressed that she feared for the health of her unborn child.

58.    On or about March 14, 2024, Quill met with Jadhav and complained about her treatment and stated that ezCater had a "toxic work environment" that "stemmed from leadership."

59.    Quill also stated that the toxic working conditions were causing her severe emotional distress symptoms, including anxiety, and that she feared it could adversely impact her pregnancy.

60.    Jadhav told Quill she should immediately take leave.

61.    On or about March 25, 2024, Quill went out on FMLA and PFML concurrently.

62.     Jadhav never reported the findings of an investigation into Quill's complaint.

63.     Upon information and belief, ezCater never conducted an investigation.

64.     Eight business days after starting her leave, on or about April 4, 2024, ezCater management notified Quill that they were terminating her employment.

65.     As grounds for Quill's termination, ezCater management stated there had been a "change in executive leadership" and that her "role needed to be eliminated due to a restructure."

66.     This was not true, but was instead a flimsy attempt on the part of ezCater management to hide the fact that they were discriminating and retaliating against Quill by terminating her employment because she had taken leave.

67.     EzCater's retaliation of Quill is evidenced by the fact that: (i) Quill was deemed a stellar employee with no negative performance reviews and worked within several different product areas throughout her tenure with ezCater and possessed a holistic knowledge of the company's product divisions; and (ii) there were multiple product manager positions available within ezCater for which Quill was eminently qualified.

68.     Quill is now without a job and with no realistic opportunity for attaining gainful employment in the near term given the recent birth of her child.

69.     On or about May 30, 2024, Quill initiated an action before the MCAD and the EEOC alleging violations of G.L. c. 151B, § 4 and Title VII of the Civil Rights Act of 1964. See MCAD Docket No.: 24BEM01712; EEOC Federal Charge No.: 16C-2024-02044.

70.     On or about September 10, 2024, Quill removed her action from the EEOC and now brings this action.

### C. Hopkins

71.     Hopkins  is a product management professional with over eight years' experience

leading cross-functional teams to prioritize, plan, build, and launch exceptional customer and vendor products.

72.    In or about June, 2022, Hopkins began working for ezCater as its principal product manager, delivery.

73.    Hopkins manager, Brandon Green ("Green"), discriminated against Hopkins and other female ezCater employees, by, among other things, diminishing their contributions to the company, seeking to silence them, speaking over them, and generally condescending to them.

74.    Green's rude and condescending actions towards Green became so pronounced that Ray sent Green and Cynthia Liang ("Liang"), Green's other direct report, a Slack message stating that he was concerned about Green's behavior and "wanted to hear [Hopkins and Green's] voices and thoughts, not just Greens."

75.    On or about February, 2023, Jadhav met with Hopkins and told her that several ezCater employees brought complaints regarding Green's discriminatory treatment on behalf of Hopkins and her female colleague.

76.    During this meeting, Hopkins became emotional, started to cry and told Jadhav she felt like "her voice is not being heard."

77.    Green left the company several weeks later.

78.    Thereafter, Hopkins, along with Quill, reported to Ray.

79.    Ray went on parental leave in or about June, 2023 and medical leave in or about October, 2023.

80.    During Ray's absences, Hopkins reported to Berg, along with Quill.

81.    Like Green, Berg was generally dismissive of Hopkins and Quill's efforts and contributions to the company and unfairly targeted them and tried to put them on PIPs.

11

82.    Berg treated them in a disparate manner as compared to their male colleagues.

83.    In fact, Berg blocked and/or interfered in nearly every project or product launch that Hopkins' team initiated and then, infuriatingly, told Hopkins that she "didn't have a strategy" and that she was "taking too long" on projects.

84.    In or about December, 2023, Berg presented Hopkins with a PIP.

85.    Hopkins refused to sign the PIP and immediately complained to Jadhav and told her that she was being targeted because she is a woman and that she was experiencing serious mental distress due to the discrimination and hostile work environment, including, among other things, anxiety, depression and insomnia.

86.    In response, Jadhav told Hopkins she needed to take leave from the company.

87.    Upon information and belief, Jadhav failed to conduct an investigation into the complaint made by Hopkins.

88.    Hopkins told Jadhav she feared that ezCater management would retaliate against her for taking leave, but she reluctantly agreed to do so.

89.    On or about December 7, 2023, Hopkins went out on leave in order to treat her emotional distress symptoms.

90.    Hopkins leave was approved for three months.

91.    In or about January, 2024, ezCater posted a position for a "principal product manager for fulfillment operations." See Exhibit C, appended.

92.    The responsibilities for this position were nearly identical to Hopkins' responsibilities.

93.    On or about March 4, 2024, Hopkins returned from leave. However, she was not placed in her prior position. Instead, she was placed in one role without any real responsibilities

and then was tasked with taking over Quill's responsibilities after Quill went out on leave, which Hopkins did for approximately one week.

94.     Accordingly, it was clear to Hopkins that ezCater had already backfilled her role, albeit under a slightly different name, and that she was allowed to return from leave until such time as her replacement could start the position.

95.     On or about April 4, 2024, Hopkins was notified that ezCater was terminating her employment.

96.     On or about April 8, 2024, Hopkins' replacement, a Caucasian man, started in the position.

97.     On or May 30, 2024, Hopkins initiated an action before the MCAD and EEOC alleging violations of G.L. c. 151B, § 4, and Title VII of the Civil Rights Act of 1964. See MCAD Docket No.: 24BEM01760.

98.     On or about September 10, 2024, Hopkins removed her action from the EEOC and now brings this action.

### D.  Han Koi

99.     Han Koi is an experienced startup co-founder with a history of working in both tech enabled services as well as the peer-to-peer industry.

100.    In or about October, 2021, Han Koi began working for ezCater as its senior product manager.

101.    Throughout his tenure, Han Koi, who is Asian-American, was treated worse than his Caucasian, male peers.

102.    Han Koi was regularly denied promotional opportunities and meaningful compensation increases commensurate with his Caucasian, male peers.

13

103. Han Koi's Caucasian, male peers all received substantial increases in their pay after their first year, but Han Koi did not.

104. In fact, Han Koi was not even aware that ezCater gave annual pay increases until being so informed by his Caucasian, male peers.

105. At no time prior to these pay increases had Han Koi been informed that his performance was poor.

106. On the contrary, Han Koi had been told that he was an excellent performer.

107. Han Koi complained to ezCater's Human Resources department about not receiving a raise but was never provided with a reason for this adverse employment decision.

108. Han Koi never received a response to his complaint of discrimination.

109. Upon information and belief, ezCater did not investigate his complaint of discrimination.

110. Han Koi was also never promoted during his time at ezCater, despite having started with the company as one of its leading product managers.

111. Further, when ezCater reorganized its divisions, Han Koi was relegated to an undesirable position within an organization that had historically received little to no resources or attention from company leadership.

112. Han Koi was also repeatedly denied the opportunity to be considered for new opportunities within the company and was passed over twice for promotions to positions for which he was eminently qualified.

113. Han Koi again complained to ezCater management regarding the lack of pay increases and promotional opportunities, but to no avail.

114. Han Koi was also subjected to adverse employment actions for purported

14

infractions that were otherwise ignored when committed by his Caucasian, male peers such as when he was placed on a "proof of performance" plan.

115.    As stated in paragraph 11(a), above, Han Koi would have been placed on a PIP if not for the actions of Corker who protested ezCater management's decision and stated that she believed Han Koi was being discriminated against.

116.    Thereafter, Corker spoke to Han Koi's colleagues to determine why ezCater was insistent on placing Han Koi on a PIP and none of Han Koi's colleagues stated he was a poor performer.

117.    In fact, several of Han Koi's Caucasian counterparts were engaged in the same work as Han Koi and performing at the same level but were not placed on a "proof of performance" plan.

118.    Upon information and belief, the "proof of performance" plan was merely ezCater's pretextual means of retaliating against Han Koi for his complaints with the intent of forcing him out of its employ.

119.    As a result of ezCater's discrimination and hostile work environment, Han Koi suffered, and continues to suffer, serious emotional distress with suicidal ideations.

120.    At the time his suicidal ideations began, Han Koi was reluctant to seek leave to treat his distress because he feared that ezCater management would retaliate against him.

121.    Nevertheless, on or about April 1, 2024, Han Koi requested leave to treat his emotional distress. See Exhibit D, appended.

122.    Less than three business days later, on or about April 4, 2024, Han Koi was informed that his employment with ezCater was being terminated and that his position was being eliminated.

123. Upon information and belief, ezCater has not eliminated Han Koi's position but has filled that position with another new employee, albeit under a different name.

124. Accordingly, ezCater has discriminated and retaliated against Han Koi and unlawfully denied his right to take leave and retaliated against him for stating his intention regarding the same.

125. On or about May 30, 2024, Han Koi initiated an action before the MCAD alleging violations of G.L. c. 151B, § 4, and Title VII of the Civil Rights Act of 1964. See MCAD Docket No.: 24BEM01711; EEOC Federal Charge No.: 16C-2024-02043.

126. On or about September 10, 2024, Han Koi removed his action from the EEOC and now brings this action.

**COUNT I**
**DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII**
**OF THE CIVIL RIGHTS ACT OF 1964 AND M.G.L. C. 151B § 4, AS AMENDED BY**
**THE PREGNANT WORKERS FAIRNESS ACT**
**PLAINTIFFS  AGAINST EZCATER**

127. All allegations set forth above are restated and realleged as if set forth in full herein.

128. As set forth above, Corker and Hopkins are members of a protected class with respect to, *inter alia*, their gender.

129.  As set forth above, Quill is also a member of a protected class with respect to, *inter alia*, her gender and she was discriminated against on account of her gender and pregnancy.

130. As set forth above, Han Koi is a member of a protected class with respect to, *inter alia*, his race.

131. As set forth above, the conduct of ezCater constitutes unlawful discrimination based on the Plaintiffs' protected statuses and violates Title VII of the Civil Rights Act of 1964

16

and M.G.L. c. 151B.

132.    The work environment at ezCater was hostile and/or abusive for the Plaintiffs as a result of the discriminatory and/or retaliatory actions directed against them as set forth above.

133.    The Plaintiffs suffered adverse tangible employment actions as a result of ezCater's hostile work environment.

134.    EzCater management knew of the abusive conduct directed against the Plaintiffs but failed to rectify it.

135.    In addition, the conduct of ezCater was so severe and pervasive that a reasonable person in the Plaintiffs' positions would similarly find ezCater's work environment to be hostile and/or abusive. This conduct interfered with the terms and conditions of employment for the Plaintiffs.

136.    The outrageous conduct of ezCater described in detail above was done with malice and oppression and with conscious disregard for the Plaintiffs' rights and with the intent, design and purpose of injuring them. EzCater, through its officers, managing agents and/or its supervisors, authorized, condoned and/or ratified the unlawful conduct directed towards the Plaintiffs.

137.    By virtue of the conduct alleged above, ezCater participated in a pattern and practice of violating the Plaintiffs' Civil Rights through acts of discrimination.

138.    Furthermore, ezCater retaliated against the Plaintiffs after they engaged in activities protected by Title VII of the Civil Rights Act of 1964 and M.G.L. c. 151B and there was a direct causal connection between the Plaintiffs protected activities and ezCater's retaliation.

139.    As a direct and proximate result of ezCater's actions and inactions, including its

willful, knowing and intentional discrimination and retaliation, the Plaintiffs have suffered and continue to suffer damages including but not limited to lost wages, lost promotional opportunities, lost commissions and other benefits.

140.    As a further direct and proximate result of ezCater's conduct, the Plaintiffs have also suffered and continue to suffer emotional and mental distress with objective symptomology, anguish, embarrassment, humiliation and reputational damages.

141.    As a result of ezCater's unlawful discrimination and retaliation, the Plaintiffs' seek any and all compensation and damages as may be available under law including punitive or exemplary damages, attorneys' fees and costs.

## COUNT II
## DISCRIMINATION AND RETALIATION IN VIOLATION OF THE FMLA AND PFML QUILL, HOPKINS AND HAN KOI AGAINST EZCATER

142.    All allegations set forth above are restated and realleged as if set forth in full herein.

143.    At all times relevant herein, Quill, Hopkins and Han Koi were eligible employees within the meaning of the FMLA, 29 U.S.C. § 2601 and PFML, G.L. c. 175M.

144.    At all times relevant herein, ezCater was a covered employer within the meaning of the FMLA and PFML.

145.    By the actions described above, among others, ezCater violated the FMLA and PFML by unlawfully interfering with, restraining, or denying the exercise of Quill, Hopkins and Han Koi's rights by, *inter alia*, terminating Quill's employment while she was on leave, failing to return Hopkins to the same position upon her return from leave and then terminating her employment weeks later, and terminating Han Koi's employment less than three business days after he noticed his intention to take leave.

146. As a direct and proximate result of ezCater's unlawful conduct in violation of the FMLA/PFML, Quill, Hopkins and Han Koi have suffered and continue to suffer harm for which they are entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## COUNT III
## VIOLATION OF THE MASSACHUSETTS PAY EQUITY LAW
## CORKER, QUILL AND HOPKINS AGAINST EZCATER

147. All allegations set forth above are restated and realleged as if set forth in full herein.

148. The Massachusetts Pay Equity Law, G.L. c. 149 § 105A, makes it unlawful for employers to discriminate against employees because of their gender when deciding and paying wages.

149. Upon information and belief, Corker, Quill and Hopkins earned less than similarly situated colleagues who are male.

150. The similarly situated male colleagues performed substantially similar jobs and have comparable or lesser qualifications or experience.

151. Accordingly, Corker, Quill and Hopkins are entitled to recover their lost wages and are also entitled to liquidated damages, reasonable attorneys' fees and the costs of this action pursuant to G.L. c. 149, § 105A.

## PRAYERS FOR RELIEF

WHEREFOR, the Plaintiffs respectfully pray that this Court grant them the following relief:

1) Enter judgment against ezCater in such amount as the Court deems proper and just;

19

2) Award the Plaintiffs damages for lost wages and benefits in an amount according to proof at trial;

3) Award the Plaintiffs reasonable attorney's fees, costs and interest allowable by law;

4) Award the Plaintiffs punitive and emotional damages according to proof;

5) Award the Plaintiffs damages for unequal pay as well as treble damages; and

6) Grant such other relief as the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiffs respectfully demand a trial by jury on all counts and all issues so triable.

Respectfully submitted,

ASHLEIGH CORKER, NICOLE QUILL, SHELBY HOPKINS and DAVID HAN KOI,

Plaintiffs,

By their attorney,


/s/ Travis T. Pregent
Travis T. Pregent, Esq. (BBO #682998)
PREGENT LAW
Fifty Milk Street, 16th Floor
Boston, MA 02108
(978) 381-3256
travis@pregentlaw.com

Date: November 20, 2024