UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ASHLEIGH CORKER et al., <br><br> Plaintiffs <br><br> v. <br><br> EZCATER, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) Case No. 24-cv-12888-DJC ) ) ) ) ) ) ) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                              **July 23, 2025**

**I.     Introduction**

Plaintiffs Ashleigh Corker ("Corker"), Nicole Quill ("Quill"), Shelby Hopkins ("Hopkins"), David Han Koi ("Han Koi") (collectively, the "Plaintiffs" or "former employees") have filed this lawsuit against Defendant ezCater, Inc. ("ezCater") alleging violations of Title VII of the Civil Rights Act of 1964 and Mass. Gen. L. c. 151B § 4 (Count I), violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, and Paid Family Medical Leave ("PFML"), Mass. Gen. L. c. 175M, (Count II) and violations of the Massachusetts Pay Equity Law, Mass. Gen. L. c. 149 § 105A, (Count III).  D. 1.  EzCater has moved to sever and dismiss the claims pertaining to Corker, Hopkins and Han Koi.  D. 10.  Alternatively, ezCater has moved to transfer venue of their claims to the federal district courts in the Plaintiffs' home states.  Id.  The former employees have responded to the motion by seeking leave to file an amended complaint to clarify their contacts with Massachusetts and to add an additional plaintiff, Ankitha Gadag ("Gadag")

1

(collectively, with Corker, Hopkins and Han Koi, "out-of-state employees").  D. 13; see D. 13-1.  The former employees allege they worked within ezCater's product department at the same time and were discriminated against and retaliated against based on their gender, race and/or pregnancy, that ezCater violated the FMLA and PFML and the Massachusetts Pay Equity Law, and retaliated against them for complaining about discrimination.

For the reasons stated below, the Court ALLOWS the former employees' motion for leave to file an amended complaint, D. 13, and DENIES ezCater's motion to dismiss, sever or transfer the out-of-state employees' claims, D. 10.

## II.     Standard of Review

### A.     Severance of Claims

Courts may "sever any claim against a party," Fed. R. Civ. P. 21, and "[t]he decision to separate parties or claims is a case management determination peculiarly within the discretion of the trial court."  Acevedo-Garcia v. Monroig, 351 F.3d 547, 558 (1st Cir. 2003) (internal citation and quotation marks omitted).  "When considering a motion to sever under Rule 21, [the First Circuit has] looked to Rule 20, which provides the legal standard for permissive joinder, for guidance."  Kress Stores of Puerto Rico, Inc. v. Wal-Mart Puerto Rico, Inc. 121 F.4th 228, 244 (1st Cir. 2024).  "As long as the parties meet the test for permissive joinder, courts generally allow joinder unless other considerations such as avoiding prejudice and delay, assuring judicial economy, or safeguarding fundamental fairness counsel otherwise."  Abraham v. Allen Mello Dodge, Inc., No. 11-cv-329-JD, 2011 WL 4625686, at *3 (D.N.H. Oct. 3, 2011).

### B.     Lack of Personal Jurisdiction

In ruling on a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) without an evidentiary hearing, a district court must apply the prima facie standard of review.  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).  "Under this

standard, it is [the] plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." Id. (citing United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)). "However, in evaluating whether the prima facie standard has been satisfied, the district court is not acting as a factfinder, rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." Id. (internal citation and quotation marks omitted). Accordingly, the Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998) (citing Ticketmaster-New York, Inc., 26 F.3d at 203).

### III.    Factual Background

The Court draws the following factual allegations from the former employees' complaint, D. 1, and proposed amended complaint, D. 13-1.[1]

---

[1] The Court notes that ezCater has moved to dismiss the original complaint, D. 10, but not the amended complaint, D. 13-1, which was filed after its motion. D. 13. Although "[a]n amended complaint, once filed, normally supersedes the antecedent complaint," Connectu LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008) (citing InterGen N.V. v. Grina, 344 F.3d 134, 145 (1st Cir. 2003)), district courts may still consider a motion to dismiss the prior complaint if "the amended complaint is 'substantially identical to the amended original complaint[.]'" Mandali v. Clark, No. 13-cv-1210, 2014 WL 5089423, at *2 (S.D. Ohio Oct. 9, 2014) (quotations omitted). Because the amended complaint is substantively the same as the original complaint except as to the allegations that relate to the issue of personal jurisdiction of the out-of-state employees that the parties have otherwise addressed in the motion papers, the Court deems ezCater's motion to dismiss applicable to same. See Markham Concepts, Inc. v. Hasbro, Inc., No. 15-cv-419-WES, 2017 WL 4685074, at *1 n.1 (D.R.I. Oct. 17, 2017) (holding that the defendant's motion to dismiss should apply to the plaintiffs' third amended complaint in the interest of efficiency).

EzCater is a corporation with a principal place of business in Boston, Massachusetts. D. 1 ¶ 6; D. 13-1 ¶ 7. EzCater connects businesses with restaurants and caterers through an online marketplace and has approximately 999 employees across six continents. D. 1 ¶ 6; D. 13-1 ¶ 7.

Quill, a Massachusetts resident, began working at ezCater as a senior product manager in June 2022. D. 1 ¶¶ 3, 45; D. 13-1 ¶¶ 3, 45. As alleged, Quill was subjected to a "toxic, hostile and discriminatory" work environment there, where leadership ignored her ideas, disregarded her contributions to the company, harassed her and threatened her with termination. D. 1 ¶¶ 46-48; D. 13-1 ¶¶ 46-48. Quill told ezCater management that she was pregnant in December 2023 and of her intent to take leave around May 2024. D. 1 ¶ 54; D. 13-1 ¶ 55. On or about March 14, 2024, Quill complained to human resources about her treatment and working conditions, which were causing her severe emotional distress symptoms that she feared could adversely impact her pregnancy. D. 1 ¶¶ 58-59; D. 13-1 ¶¶ 59-60. On or about March 25, 2024, Quill went out on FMLA and PFML and eight business days later ezCater management allegedly notified Quill that they were terminating her employment. D. 1 ¶¶ 61, 64-65; D. 13-1 ¶¶ 62, 65-66.

        1.      *Out-of-State Former Employees*

           a)      <u>Ashleigh Corker</u>

Corker, a Washington resident, began working at ezCater as its Director of Product, Marketplace in June 2022. D. 1 ¶¶ 2, 9; D. 13-1 ¶¶ 2, 10. Corker regularly traveled to and worked out of ezCater's Massachusetts headquarters, and her paycheck was issued from Massachusetts. D. 13-1 ¶¶ 11. Her managers, including Joshua Berg ("Berg"), a Massachusetts resident, and most of her direct reports, including Han Koi, resided in Massachusetts. Id. ¶¶ 11, 23. On or about May 23, 2023, an ezCater Vice President made an unwanted sexual advance towards Corker at a company outing in Boston, Massachusetts. D. 1 ¶ 15; D. 13-1 ¶ 17. After Corker rejected the

executive's advances, he provided false and misleading negative feedback about Corker to her manager. D. 1 ¶¶ 16-18; D. 13-1 ¶¶ 18-20. Berg told Corker on or about June 5, 2023 that she was "controlling" and needed to "smile more and be more open and warm." D. 1 ¶ 21; D. 13-1 ¶ 23. Two weeks after sending Berg a message objecting to his comments, Corker was stripped of approximately seventy-five percent of her responsibilities and employees under her supervision were reassigned. D. 1 ¶ 23; D. 13-1 ¶ 25.

On or about June 13, 2023, Corker complained about this alleged retaliation for complaining about harassment and discriminatory treatment. D. 1 ¶ 24; D. 13-1 ¶ 26. She also complained about ezCater employees that exhibited racial bias in considering candidates for ezCater positions. D. 1 ¶ 20; D. 13-1 ¶ 22. In or about January 2024, Corker complained to Berg, Uttara Jadhav ("Jadhav") and Chris Puzzo ("Puzzo") regarding ezCater management's unfair and discriminatory treatment of Gadag, one of her direct reports. D. 13-1 ¶¶ 109-112. Corker also refused to place Han Koi, also one of her direct reports, on a performance improvement plan because ezCater management was unable to articulate a legitimate reason. D. 1 ¶ 11(a); D. 13-1 ¶ 13(a). On or about February 8, 2024, Berg and Jadhav informed Corker that she was being terminated. D. 1 ¶ 32; D. 13-1 ¶ 32.

        b)      <u>Shelby Hopkins</u>

Shelby Hopkins, a North Carolina resident, began working at ezCater as its Principal Product Manager, Delivery in June 2022. D. 1 ¶¶ 4, 72; D. 13-1 ¶¶ 4, 73. Hopkins regularly traveled to and worked out of ezCater's Massachusetts headquarters, and her paycheck was issued from Massachusetts. D. 13-1 ¶ 74. Her managers, including Brandon Green ("Green"), and colleagues resided in Massachusetts. <u>Id</u>. ¶¶ 74-75. With respect to Hopkins and other female

ezCater employees, Green "diminishing their contributions to the company," sought to silence and speak over them, and was generally condescending to them. Id. ¶ 75; D. 1 ¶ 73.

Hopkins and Quill began reporting to Ray after Green left ezCater and they both reported to Berg while Ray was on parental leave in June 2023 and medical leave in October 2023. D. 1 ¶¶ 77-80; D. 13-1 ¶¶ 79-82. Berg, like Green, was "generally dismissive of Hopkins and Quill's efforts and contributions to the company," unfairly targeted them and treated them in a disparate manner compared to their male colleagues, tried to place them on performance improvement plans and blocked and/or interfered with nearly every project or product launch that Hopkins' team initiated. D. 1 ¶¶ 81-83; D. 13-1 ¶¶ 83-85. After refusing to sign a performance plan, Hopkins complained to Jadhav and told her that she was being targeted because she was a woman and that she was consequently experiencing serious mental distress. D. 1 ¶ 85; D. 13-1 ¶ 87. Hopkins went out on approved leave to from about December 7, 2023 to about March 4, 2024 and upon her return she was not placed in her prior position. D. 1 ¶¶ 89-93; D. 13-1 ¶¶ 91-95. Hopkins was placed in a role "without any real responsibilities" and then was tasked with covering Quill's responsibilities for approximately one week while Quill was out on leave. D. 1 ¶ 93; D. 13-1 ¶ 95. On or about April 4, 2024, Hopkins was notified that ezCater was terminating her employment and on April 8, 2024 her replacement, a Caucasian man, started in the role. D. 1 95-96; D. 13-1 ¶¶ 97-98.

        c)     David Han Koi

David Han Koi, a New York resident, began working for ezCater in October 2021 as a Senior Product Manager. D. 1 ¶¶ 6, 100; D. 13-1 ¶¶ 6, 136. Han Koi was a resident of Massachusetts at the time he started his position with ezCater and remained a Massachusetts resident until January 2024. D. 13-1 ¶ 137. Han Koi allegedly was regularly denied promotional opportunities and meaningful compensation increases commensurate with his Caucasian, male

6

peers. D. 1 ¶¶ 102-03; D. 13-1 ¶¶ 139-40. Han Koi complained to Jadhav on multiple occasions about his wrongful treatment and the fact that he had not received a raise and he was never provided an explanation. D. 1 ¶¶ 107, 113; D. 13-1 ¶¶ 144, 150. When ezCater reorganized its divisions, Han Koi was moved to an undesirable position within an organization that had historically received little to no resources or attention from ezCater's leadership. D. 1 ¶ 111; D. 13-1 ¶ 148. Han Koi was subjected to adverse employment actions for purported infractions that were otherwise ignored when committed by his Caucasian, male peers. D. 1 ¶ 114; D. 13-1 ¶ 151. On or about April 1, 2024, Han Koi requested leave to treat his emotional distress and less than three business days later he was informed that his employment with ezCater was being terminated and that his position was being eliminated. D. 1 ¶¶ 121-22; D. 13-1 ¶¶ 158-59.

     a) <u>Ankitha Gadag</u>

Ankitha Gadag, a Texas resident, began working at ezCater as a Principal Product Manager in September 2023. D. 13-1 ¶¶ 5, 102. She regularly traveled to and worked out of ezCater's Massachusetts headquarters, and her paycheck was issued from Massachusetts. Id. ¶ 104. Corker served as Gadag's manager while they were both employed at ezCater and then Gadag was managed by Max Librach ("Librach"), a Massachusetts resident. Id. ¶¶ 103, 118. While at ezCater, Gadag was the only woman and person of color in the company's principal product management team, management regularly ignored and/or dismissed her contributions, and her male peers provided her with "unclear and contradictory performance feedback, inconsistent performance reviews and heightened scrutiny." Id. ¶¶ 106-08. Gadag also discovered she was being paid less than her male peers. Id. ¶¶ 113-18. After a discussion with her manager regarding employee pay determinations, Gadag received a performance review that stated she was a poor performer. Id. ¶ 119-22. On or about October 25, 2024, Gadag emailed Massachusetts resident

7

Quianna Cephas ("Cephas"), ezCater's Human Resources representative, to complain about her gender discrimination and she was told she could either transition to a new manager (which would mean being "stripped of many of her responsibilities") or leave the company. Id. ¶¶ 124-27. Gadag emailed Cephas noting her "constructive discharge" and sent ezCater a letter detailing her claims of discrimination and retaliation. Id. ¶¶ 129-30.

## IV. Procedural History

The former employees initiated this action on November 21, 2024. D. 1. On January 21, 2025, ezCater filed an answer pertaining to Quill, a Massachusetts resident, D. 12, and moved to dismiss, sever or transfer the claims of the other Plaintiffs, the out-of-state employees, D. 10. In its opposition to ezCater's motion, the former employees moved for leave to file an amended complaint, D. 13; see D. 13-1. The Court heard the parties on the pending motions and took these matters under advisement. D. 24.

## V. Discussion

### A. Former Employees' Motion to Amend Complaint

A "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. Rule 15(a)(2). Leave to amend may be "denied for several reasons, including undue delay, bad faith, dilatory motive of the requesting party, repeated failure to cure deficiencies, and futility of amendment." Hagerty ex rel. United States v. Cyberonics, Inc., 844 F.3d 26, 34 (1st Cir. 2016) (internal citations and quotation marks omitted). Plaintiffs moved for leave to file a first amended complaint to clarify their contacts with Massachusetts and add a fifth plaintiff, Gadag. D. 13 at 1-2; D. 13-1.

Like Hopkins, Corker and Quill's claims in the original complaint, the proposed, additional plaintiff, Gadag asserts claims based on alleged gender discrimination. D. 13-1 ¶¶ 101-05.

8

EzCater was aware of the former employees' intent to amend the complaint to add Gadag as of January 15, 2025, see D. 15-1 at 4, and, therefore, had notice of her claims at least as of that period. See Cooper v. Charter Commc'ns Ents. I, LLC, No. 12-cv-10530-MGM, 2015 WL 1943858, at *6 (D. Mass. Apr. 28, 2015) (allowing motion to amend and holding that "[d]efendant cannot reasonably claim to be surprised or prejudiced by the allegations" in the proposed amended complaint because defendant had prior notice of these factual allegations). Given this timeline and the filing of the motion for leave to amend shortly thereafter on February 4, 2025, D. 13, this Court also cannot conclude that the Plaintiffs unduly delayed the filing of the amended complaint. See Viscito v. Nat'l Plan. Corp., No. 18-cv-30132-MGM, 2019 WL 7578462, at *5 (D. Mass. July 5, 2019) (allowing motion to amend and rejecting opposition that it should be denied for undue delay where the "sequence of events hardly warrants a conclusion that plaintiff is not diligently pursuing this litigation") (internal citation and quotation marks omitted). Finally, at this early stage of the litigation it is not evident to the Court how allowing the amended complaint would result in prejudice to ezCater, United States v. Hougham, 364 U.S. 310, 316 (1960), and the Court "enjoys significant latitude in deciding whether to grant leave to amend," U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009). For all these reasons, the Court ALLOWS the former employees' motion for leave to file an amended complaint, D. 13, and considers the amended complaint, D. 13-1, for the purposes of resolving ezCater's motion to dismiss, sever or transfer, D. 10.

### B. EzCater's Motion to Dismiss the Out-of-State Employees' Claims for Lack of Personal Jurisdiction

To exercise personal jurisdiction over a defendant, the court must "find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause." Sawtelle, 70 F.3d at 1387. Here, ezCater argues that the

9

Court should dismiss the out-of-state employees' claims because they cannot establish sufficient contacts with the Commonwealth as they do not reside in Massachusetts and they worked for ezCater from different states.[2]  D. 11 at 9-12; D. 15 at 6-7.  As the Court articulated at the motion hearing, ezCater has not engaged in the required long-arm statute and constitutional due process jurisdiction analysis for this challenge to personal jurisdiction.  See Lovern v. Astrue, No. 09-cv-40098-TSH, 2011 WL 4621455, at *6 (D. Mass. Sept. 29, 2011) (noting that "it is the parties['] burden, not the court, to develop arguments in support of their claims/positions, with citation to relevant legal authority").

Even assuming *arguendo* that ezCater had engaged in such analysis, this Court has personal jurisdiction over the parties in this action.  ezCater is a citizen of Massachusetts where its principal place of business is located, D. 13-1 ¶ 7.  Power v. Connectweb Technologies, Inc., 648 F. Supp. 3d 302, 314 (D. Mass. 2023) (reiterating that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home," including principal place of business) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011)).  The Court also has personal jurisdiction over all the former employees because "[a] plaintiff

---

[2] ezCater's motion to dismiss, sever or transfer, D. 10, only references Corker, Hopkins and Han Koi as it was filed prior to the former employees' motion for leave to amend the complaint to add Gadag.  In its reply, however, ezCater addressed Gadag's addition as a potential fifth out-of-state employee plaintiff, noting that she "is yet another former ezCater employee with a distinct decision maker and different employment period than the other named Plaintiffs" and that the former employees' "attempt to pile-on more unrelated claims by [Gadag] under the guise that sounding in discrimination warrants joinder without more should be rejected."  D. 15 at 1-2.  EzCater also argued for dismissal, severance or transfer during the motion hearing that pertained to Gadag.  In light of the Court's decision to allow the amended complaint, which adds Gadag as a plaintiff, D. 13-1, the Court also considers whether it has personal jurisdiction over Gadag for the purposes of ruling on ezCater's motion to dismiss for lack of personal jurisdiction.

consents to the personal jurisdiction of a court by brining suit in that court."[3] Sun v. City of New York, No. 23-cv-12705-NMG, 2024 WL 1344114, at *2 (D. Mass. Feb. 20, 2024) (citing Adam v. Saenger, 303 U.S. 59, 67 (1938)). For these reasons, the Court DENIES ezCater's motion, D. 10, to the extent it seeks dismissal of Plaintiffs' claims for lack of personal jurisdiction, D. 10.

### C. ezCater's Motion to Sever the Out-of-State Employees' Claims

Pursuant to Rule 20(a)(1), "[p]ersons may join in one action as plaintiffs if (A) they assert any right to relief . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). "Because the joinder rules result in beneficial economies of scale and judicial efficiency by resolving related issues in a single lawsuit . . . the preconditions for permissive joinder are construed liberally in order to promote the broadest scope of action consistent with fairness to the parties." Armendariz v. Sig Sauer, Inc., No. 22-cv-00536-JL, 2023 WL 4204666, *2 (D.N.H. June 27, 2023) (internal citation and internal quotation marks omitted). In determining whether severing claims is appropriate, the Court "considers numerous factors, including: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required

---

[3] The out-of-state employees have alleged sufficient contacts with Massachusetts in the amended complaint, including that Han Koi resided in Massachusetts while he was employed by ezCater, D. 13-1 ¶ 137, that Corker, Hopkins and Gadag regularly traveled to and worked out of ezCater's Massachusetts headquarters, id. ¶¶ 11, 74, 104, that Corker Hopkins and Gadag's colleagues, managers and/or direct reports resided in Massachusetts, id. ¶¶ 11, 23, 74-76, 80, 82, 104, and that the bulk of the wrongful conduct at issue was by employees based in Massachusetts, id. ¶¶ 17-19, 37-38, 59-65, 75-77, 106-11, 118-21, 126, 137-39. See Mass. Sch. of Law at Andover, 142 F.3d at 34 (noting the Court must construe the alleged facts "in the light most congenial to the plaintiff's jurisdictional claim") (citing Ticketmaster-New York, 26 F.3d at 203).

for the separate claims." SharkNinja Operating LLC v. Dyson, Inc., No. 23-cv-11277-ADB, 2023 WL 6796456, at *1 (D. Mass. Oct. 13, 2023) (quoting Depianti v. Jan-Pro Franchising Int'l, Inc., No. 08-cv-10663, 2016 WL 4771056, at *2 (D. Mass. Sept. 13, 2016).

EzCater asks the Court to sever the out-of-state employees' claims, arguing they do not "arise out of the same transaction" or "a question of law or fact common to all Plaintiffs" because these individuals worked and resided in different states, held different positions with different job responsibilities and worked under different supervisors. D. 10 at 1; D. 11 at 1-2, 5-9; D. 15 at 2-6. "There is no bright-line rule in the First Circuit for determining what falls under the same 'transaction or occurrence' for the purposes of permissive joinder, but the 'logical relationship' test has been applied in the District of Massachusetts." Ryan v. Newark Group, Inc., No. 22-cv-40089-MRG, 2024 WL 4815478, *16 (D. Mass. Nov. 18, 2024) (quoting New Sensations, Inc. v. Does, No. 12-10944-FDS, 2012 WL 5389921 at *3 (D. Mass. Nov. 2, 2012)). In the context of permissive joinder, the "logical relationship" test is met "where there [is] 'substantial evidentiary overlap in the facts giving rise to the cause of action of each defendant,' put another way, 'the defendants' alleged . . . acts . . . share an aggregate operative facts.'" Ryan, 2024 WL 4815478 at *16 (quoting Third Degree Films v. Does 1-47, 286 F.R.D. 188, 194 (D. Mass. 2012)). The "transaction or occurrence" standard does not require "the exact same body of evidence be used to prove all claims for joinder to be proper," Kress, 121 F.4th at 246 (citing Moore v. N.Y. Cotton Exchange, 270 U.S. 593, 610 (1926)), and "Rule 20 requires only that 'any question of law or fact [be] common to all defendants,' not that *every* question of law or fact be common," Patrick Collins, Inc., 941 F. Supp. 2d at 162 (emphasis and alteration in original and internal citation omitted).

Here, the former employees allege, not unreasonably, that their claims belong together because they "arise out of a pattern of discrimination and retaliation by ezCater," during their

12

employment with the company and the claims share common questions of law and fact. D. 13-1 ¶ 1; see D. 13 at 2-4, 8-11; see also D. 13-1 ¶¶ 30, 37, 174-75. Specifically, the former employees allege they were colleagues in the same department, they were managed by and allegedly discriminated against and retaliated against by overlapping ezCater managers who reside in Massachusetts, they complained about their alleged discrimination and retaliation to the same leadership and the potential witnesses named by the former employees reside in Massachusetts. D. 13 at 2-4, 8-11; see D. 13-1 ¶¶ 1, 10-11, 17-21, 23, 26, 35-37, 45, 59-60, 73-78, 80-87, 90, 102-04, 107-12, 118-22, 124, 129-30, 136-37, 144, 150, 152-53. While the former employees have asserted different bases for alleged violations of Title VII (Count I), including gender (Corker, Hopkins, Quill and Gadag), race (Han Koi) and pregnancy (Quill), and violations of the FMLA, PFML (Count II as to Quill, Hopkins and Han Koi), and the Massachusetts Pay Equity Law (Count III as to Corker, Quill, Hopkins and Gadag), their claims still have a "logical connection" beyond the mere allegations of discrimination and retaliation. Kress, 121 F. 4th at 243; see Alston v. Town of Brookline, Mass., No. 15-cv-13987, 2016 WL 5745091, at *11, 12 (D. Mass. Sept. 30, 2016) (noting that "a widespread policy of discrimination may form a basis for joinder" but distinguishing the facts alleged in that case and concluding that joinder was not warranted where "there [was] no factual overlap between any of their claims" and plaintiffs alleged twenty-one different unwritten policies) (citing Wynn v. Nat'l Broad Co., 234 F. Supp. 2d 1067, 1087 (C.D. Cal. 2002)). All five former employees were colleagues in the same product department at ezCater, serving as product managers or directors. D. 13-1 ¶¶ 10, 45, 73, 102, 136. During that time, there was overlap between the former employees' managers, colleagues, and human resources personnel that allegedly perpetuated, disclosed or were informed of the alleged discriminatory and retaliatory acts. See Walker v. Bryson, No. 11-cv-01195-AWI, 2012 WL 5186658, at *4-6 (E.D. Cal. Oct.

16, 2012) (noting that "[a]lthough there might be different occurrences, where the claims involve enough related operative facts, joinder in a single case may be appropriate" and concluding the plaintiffs shared supervisors they each claimed was involved in the alleged wrongful conduct).

EzCater contends that the out-of-state employees' unique circumstances mean that each of their claims involve different witnesses in different states, different evidence and legal theories that will require ezCater to put forth differing proof of non-retaliatory actions taken by the company and that alleged damages will be unique to each claimant. D. 11 at 1-2, 5-9; D. 15 at 1-4, 6. Although ezCater's defense against the former employees' claims may vary to some degree by individual, it remains true that the former employees' claims share common questions of law and fact given their pursuit of the same causes of action sounding in discrimination and retaliation and involving the same department, supervisory personnel and concurrent relevant time periods. See Disparte, 223 F.R.D. at 11 (stating that "where multiple plaintiffs bring suit for employment discrimination alleging a pattern of discriminatory behavior 'a broad variation of circumstances relating to the merits of individual performance of each of the plaintiffs' will not nullify a common question of fact'") (internal citation and quotation marks omitted).

Notwithstanding the Court's view that the former employees have satisfied the Rule 20 joinder requirements, the Court has discretion to sever claims where keeping them together in one action would not "comport with the principles of fundamental fairness" or would lead to prejudice. Visendi v. Bank of Am., N.A., 733 F.3d 863, 870 (9th Cir. 2013); see Patrick Collins, Inc., 941 F. Supp. 2d at 164. EzCater asserts that keeping the former employee's claims together would be prejudicial "by creating an optical sphere of culpability by sheer coincidence of [all plaintiffs] filing in the same pleading without material factual or legal overlap," and alleging "a hostile environment through improper and unrelated 'me too' evidence." D. 11 at 3, 7. Relatedly, ezCater

14

contends that keeping the claims together will lead to judicial inefficiency and jury confusion regarding evidence, ezCater's defenses and business reasons that motivated personnel actions. Id. 6-8; D. 15 at 4, 6-8. It is the Court's view that while ezCater's concerns may relate to potential prejudice and jury confusion at the trial stage, they do not outweigh the benefits advancing judicial efficiency by keeping the Plaintiffs' claims together for discovery at this juncture. The former employees have alleged commonalities of fact and law between the various claims to support joint discovery, including the overlap of the named witnesses that reside and worked in this district where ezCater is headquartered and common evidence likely exists. See D. 13 at 10-11. The Court also anticipates there may be substantial overlap of ezCater's discovery efforts and witnesses for multiple former employees based on their allegations in the amended complaint. See Huard v. Kennebec Cnty. Sheriff's Office, No. 16-cv-00473-GZS, 2017 WL 589092, at *2 (D. Me. Feb. 14, 2017) (denying defendants' motion to sever without prejudice where counsel for plaintiffs and defendants were identical in each case, "certain efficiencies could be realized if the claims remained consolidated at least for discovery," "discovery on some issues . . . would be relevant on each claim," and "consolidated discovery would avoid duplication"). Moreover, after the completion of discovery, ezCater may renew its motion to sever and the Court can assess the matter at that juncture. Id. at * 2 n.2.

For these reasons, the Court concludes that severance of the out-of-state employees' claims is not warranted now. Accordingly, the Court DENIES ezCater's motion, D. 10, without prejudice as to the motion to sever.

        **D.**      **EzCater's Alternative Motion Transfer the Out-of-State Employees' Claims**

EzCater alternatively moved to transfer the case of the out-of-state employees to the appropriate U.S. district courts in Washington, New York and North Carolina. D. 11 at 12-13.

15

The Court has discretion to transfer a case under 28 U.S.C. § 1404(a) but "there is a presumption in favor of the plaintiff's choice of forum and the defendant must bear the burden of proving that a transfer is warranted." SharkNinja, 2023 WL 6796456, at *2 (quoting Momenta Pharms., Inc. v. Amphastar Pharms., Inc., 841 F. Supp. 2d 514, 522 (D. Mass. 2012)).  In deciding whether transfer is appropriate, the Court considers private and public interest factors, including "1) the plaintiff's choice of forum, 2) the relative convenience of the parties, 3) the convenience of the witnesses and location of documents, 4) any connection between the forum and the issues, 5) the law to be applied and 6) the state or public interests at stake." Id.

Courts have assigned less weight to a plaintiff's choice of forum "[w]here the forum has no obvious connection to the case or where the plaintiff is not a forum resident." Bowen v. Elanes New Hampshire Holdings, LLC, 166 F. Supp. 3d 104, 108 (D. Mass. 2015).  Although four of the five former employees here are not residents of Massachusetts, they have alleged operative facts indicating a connection to this forum, including that they resided and worked in Massachusetts during the relevant time period (Han Koi), D. 13-1 ¶ 137, regularly traveled here to work out of ezCater's headquarters (Corker, Hopkins and Gadag), id. ¶¶ 11, 74, 104, and the core of their claims concern interaction with Massachusetts-based employees, id. ¶¶ 17, 23, 26, 30-31, 37, 49, 75, 80, 82, 109, 118-22, 124-26.  Even if this case may warrant slightly less weight than that owed to a plaintiff suing in his/her home state, the Court nonetheless concludes this factor counsels against transfer.

With respect to the convenience of the parties, witnesses and the location of documents, the Court concludes that these factors do not counsel in favor of disturbing the Plaintiffs' choice of forum.  First, EzCater's headquarters, management and leadership personnel, the witnesses named in the amended complaint and potential evidence pertinent to this case are located here,

16

making it more convenient for ezCater to proceed with its defense.  Second, while the Court takes ezCater's point that discovery will involve evidence and witnesses that do not reside in Massachusetts, D. 15 at 6-7, its unnamed out-of-state witnesses may nonetheless need to travel to participate in the litigation if the Court transferred the claims elsewhere.  See Gemini Investors Inc. v. Ameripark, Inc., 542 F. Supp. 2d 119, 127 (D. Mass. 2008) (noting that transferring the action "would only serve to shift the inconvenience of the witnesses from the defendant to the plaintiff, a practice which is universally disfavored").  Third, ezCater has not shown that potential documents or evidence that may exist outside of Massachusetts could not be easily transported here.

The remaining factors—connection between the forum and the issues, the applicable law, and the state or public interests at stake—also do not favor transfer at this time.  The connection between the forum and the issues in this action is based on the alleged discrimination and retaliation of the former employees by other employees based at a Massachusetts company and in violation of federal and Massachusetts law.  The amended complaint suggests that Massachusetts has a connection to the litigation "a clear interest in trying and resolving the case in a local forum, and fairness suggests that jury duty should fall on [its] citizens."  Bowen, 166 F. Supp. 3d at 109 (quoting Atari v. United Parcel Serv., Inc., 211 F. Supp. 2d 360, 365 (D. Mass. 2002).

Accordingly, the Court concludes that ezCater has not shown that transfer of the out-of-state employees' claims is warranted and DENIES ezCater's motion, D. 10, without prejudice to that extent.  Because Section 1404(a) does not set a limit on the time when parties may move to transfer, ezCater may renew its motion to transfer the claims after the completion of discovery.  Securities and Exchange Commission v. Zouvas, No. 16-cv-0998-CAB, 2017 WL 3706750, at *1 (S.D. Cal. Feb. 7, 2017) (noting there is no time bar on transfer under Section 1404(a)).

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS the former employees' motion to amend the complaint, D. 13, and DENIES ezCater's motion to dismiss, sever or transfer the out-of-state employees' claims, D. 10.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge
